### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| JOSHUA ARTHUR MORONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. _____ |
| VS. | § | |
| | § | |
| SUNTRUST MORTGAGE, INC. and | § | |
| PENNYMAC LOAN SERVICES, LLC, | § | With Jury Demand Endorsed |
| | § | |
| Defendants. | § | |

### COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, Joshua Arthur Morones ("Plaintiff"), by counsel, and for his Complaint against the defendants, SunTrust Mortgage, Inc. ("SunTrust") and PennyMac Loan Services, LLC ("PennyMac") (collectively "Defendants") states as follows:

### I. INTRODUCTION

1.     Plaintiff asserts claims against Defendants for the willful, knowing, and/or negligent violations of: 1) Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 *et seq*., (known as the Fair Credit Reporting Act, hereinafter referred to as the "FCRA") which relates to the dissemination of consumer credit and other financial information; 2) the Texas Debt Collection Act Tex. Fin. Code § 392.001 *et. seq*.; 3) invasion of privacy; 4) unreasonable collection, and 5) the chapter 7 discharge injunction of the United States Bankruptcy Court of the Eastern District of Texas, Eastern Division, and seeks to recover actual, statutory, and punitive damages, injunctive relief, legal fees and expenses against Defendants.

## II. PARTIES

2.      Plaintiff is a natural person residing in Collin County, Texas and he is a "consumers" as defined by the FCRA.

3.      Defendant PennyMac is a foreign limited liability company which may be served by delivering citation to its registered agent, CT Corporation System, 350 N. St. Paul, Suite 2900, Dallas, TX 75201-4234.

4.      Defendant SunTrust is a foreign corporation which may be served by delivering citation to its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

5.      Defendants are "persons" and a "users" of consumer credit and other financial information, as said terms are defined and contemplated respectively, under the FCRA.

6.      Defendants are "debt collectors" as defined by Tex. Fin. Code § 392.001(6).

7.      Defendants are furnishers of consumer credit information to Trans Union, LLC and Experian, two of the three (3) national consumer reporting agencies.

## III. JURISDICTION AND VENUE

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1334 and 1337(a) and 15 U.S.C. § 1681p and 28 U.S.C. §§2201-2202.

9.      Venue in this district is proper because the defendants transact business in this district, Plaintiff filed his bankruptcy in this district and the conduct complained of occurred in this district.

### III. FACTUAL ALLEGATIONS

10.     On October 25, 2012, Plaintiff filed bankruptcy and was discharged on January 22, 2013 with Defendant SunTrust receiving a copy of the Discharge Order.  The bankruptcy case number was 12-42868 ("Bankruptcy Case") and it was filed in the Eastern District of Texas Bankruptcy Court ("Bankruptcy Court").

11.     Prior to Plaintiff filing his Bankruptcy Case, Defendant SunTrust asserted a pre-petition claim against Plaintiff in an attempt to collect a consumer debt allegedly owed by Plaintiff.  The debt required Plaintiff to pay money arising out of transactions in which money, property, insurance, or services were the subject thereof and the same were primarily for personal, family, or household purposes.  In Plaintiff's bankruptcy petition, the claim was listed in Schedule "D" as a secured claim, such claim was secured by a lien on Plaintiff's prior home located at 57959 Pimlico St., Yucca Valley, California 92284 (the "Property") and was identified as Account No. 1000049898 (the "Loan" or "Account").  In his bankruptcy case, Plaintiff listed the Property as "surrendered" on his Chapter 7 Individual Debtor's Statement of Intention filed with his bankruptcy petition and had previously moved out of the Property.

12.     A true and correct copy of Plaintiff's Chapter 7 Individual Debtor's Statement of Intentions is attached hereto as "A."

13.     On October 25, 2012, Plaintiff filed a mailing matrix with the Bankruptcy Court that provided Defendant SunTrust's correct address.

14.     On October 28, 2012, the Clerk of the Bankruptcy Court for the Eastern District of Texas, mailed out the "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines" to all creditors, including Defendant Suntrust, and other parties based on the mailing matrix previously filed with the Bankruptcy Court.  This mailing constituted formal notice to SunTrust of the above

Chapter 7 Bankruptcy and warned all creditors, including Defendant SunTrust, in conspicuous language against violating the automatic stay pursuant to 11 U.S.C. §362.  The United States Postal Service did not return the notice sent to SunTrust.  If the United States Postal Service did not return the notice, there is a presumption that SunTrust received the notice mailed to it by the Clerk of the Bankruptcy Court.

15.    On or about November 18, 2012, SunTrust filed a motion for relief from stay which was granted on November 26, 2012.  Such order allowed Defendant SunTrust to proceed to exercise its right to foreclose on its collateral.  A true and correct copy of such Order Granting Motion for Relief from Stay of Action against Debtors is attached as Exhibit "B."

16.    On January 22, 2013, the Bankruptcy Court issued an order granting Plaintiff a discharge ("Discharge Order") (the said Order followed Official Form B18, including the explanatory language contained therein).  The Order discharged Plaintiff from any liability for Defendant's pre-petition claim.  Included with the Discharge Order was an explanation of the general injunction prohibiting Defendants and others holding pre-petition claims from attempting to collect the claims against Plaintiff.

17.    The Discharge Order was mailed out to all creditors and other parties listed on the mailing matrix previously filed the Bankruptcy Court.  This mailing constituted formal notice of Plaintiff's discharge and the replacement of the automatic stay with the discharge injunction of 11 U.S.C. §524(a).  The Discharge Order and its notice warned all creditors, including Defendant, in conspicuous language that collection of discharged debts was prohibited.  The Discharge Order and notice mailed to SunTrust was not returned.  If the United States Postal Service has not returned the mailing of the Discharge Order and notice, there is a presumption that Defendant SunTrust received the Discharge Order and notice mailed to it by the Clerk of the

Bankruptcy Court.  A copy of the Discharge Order is attached herein as Exhibit "C" and is incorporated herein by reference.

18.     At no time has any Defendant objected to or disputed the details of the claim in the October 25, 2012 schedules filed in Plaintiff's Bankruptcy Case.

19.     At no time during the pendency of the Bankruptcy Case did Plaintiff reaffirm SunTrust's debt.

20.     At no time during the pendency of the Bankruptcy Case was SunTrust's pre-petition claim declared to be non-dischargeable.

21.     Subsequent to Plaintiff filing for bankruptcy relief on October 25, 2012, SunTrust sold or assigned the Account for servicing to PennyMac, even though SunTrust knew the Property had been surrendered and the debt was or would soon be discharged in the Bankruptcy Case.  Upon acquiring the loan or servicing rights to the loan, PennyMac acquired the records of the Account including the notices of Plaintiff's bankruptcy filing that were contained in those records.   In December of 2012, PennyMac had actual notice of Plaintiff's bankruptcy filing, as it accessed Plaintiff's Experian Credit report and in April 2013 reported to Experian that the Account had been discharged.

22.     On or about December 6, 2012, PennyMac, as agent for SunTrust, impermissibly accessed Plaintiff's credit report and credit information with Experian.   The purpose for accessing Plaintiff's credit report was for collection purposes in violation of the automatic stay of the Bankruptcy Court.

23.     True and correct copy of relevant portions of Plaintiff's Experian credit report showing the impermissible account review is attached hereto as Exhibit "D."

24.     True and correct copy of relevant portions of Plaintiff's TransUnion credit report showing the impermissible account review is attached hereto as Exhibit "E."

25.     Despite the communications and notices from the Bankruptcy Court and knowledge acquired from accessing Plaintiff's credit report, PennyMac, as agent of SunTrust, following the January 22, 2013 discharge, engaged in debt collection activity against Plaintiff by: (1) sending Plaintiff statements and collection letters on the Account; (2) calling Plaintiff regarding the Account in furtherance of its collection activity; (3) causing its agents or representatives to visit Plaintiff's residence in Texas regarding the Account; and (4)  impermissibly accessing Plaintiff's credit report maintained by Experian credit bureau and representing to Experian that the credit report was being pulled for "collection" or "account review" purposes.

26.     On or about February 18, 2013, PennyMac sent Plaintiff a letter that stated "this is an attempt to collect a debt" and notifying him of payment options available to him and requesting that Plaintiff call them to discuss the Account at the listed phone number (866) 545-9070, even though the Property had been surrendered and the Account had been discharged.  A true and correct copy of this letter is attached hereto as Exhibit "F."

27.     On or about April 17, 2013, PennyMac sent Plaintiff a notice advising him that it had purchased lender-placed insurance for the Property since Plaintiff failed to provide proof of acceptable homeowner's insurance, and that Plaintiff is responsible for reimbursing PennyMac for the premium at the cost of $895.70, even after it had been notified that Plaintiff surrendered the Property, the debt discharged, and there was no obligation to continue to provide insurance on the Property.  A true and correct copy of this April 17, 2013 notice is attached hereto as Exhibit "G" and incorporated herein by reference.

28.     On or about April 26, 2013, PennyMac sent Plaintiff a letter regarding the Account and informing him that it had attempted to contact him by mail and on at least three (3) occasions by phone to discuss and assess his finaincial situation.  The letter requested Plaintiff call PennyMac regarding the Account and informed him that "this is an attempt to collect a debt" and asking Plaintiff to call PennyMac at (866) 545-9070 to discuss avoiding foreclosure, even after PennyMac knew the Property had been surrendered and the Account discharged.  A true and correct copy of April 26, 2013 letter is attached hereto as Exhibit "H."

29.     On or about June 6, 2013, Defendant PennyMac sent Plaintiff a Notice of Default and Intent to Accelerate regarding the Account, indicating that $12,763.85 was needed to cure the default on the subject loan.  The notice stated it was "an attempt to collect a debt" and warned Plaintiff that if he did not pay the amount stated to cure the default that PennyMac may report the loan default on Plaintiff's credit, even though the debt had been discharged and reporting anything other than that the debt had been discharged in bankruptcy was illegal.  A true and correct copy of this June 6, 2013 notice is attached hereto as Exhibit "I" and incorporated herein by reference.

30.     On or about June 13, 2013, Defendant PennyMac sent Plaintiff another Notice of Default and Intent to Accelerate, indicating that $12,763.85 was needed to cure the default on the loan. The notice stated it was "an attempt to collect a debt" and warned Plaintiff that if he did not pay the amount stated to cure the default that it may report the loan default on Plaintiff's credit, even though the debt had been discharged and reporting anything other than that the debt had been discharged in bankruptcy was illegal.  Whereas a Notice of Default may be required for foreclosure under California law, two notices are not required and only serve to harass the

7

Plaintiff or coerce him into paying on the discharged debt.  A true and correct copy of this June 13, 2013 notice is attached hereto as Exhibit "J" and incorporated herein by reference.

31.     On or about June 18, 2013, Defendant PennyMac sent Plaintiff a Monthly Mortgage Statement for the Account, complete with payment coupon and return envelope, even after it had been notified that Plaintiff surrendered the Property and it knew the debt had been discharged. The statement represented that $12,500.56 was due, owing and collectable.  A copy of this statement has been attached hereto as Exhibit "K" and is incorporated herein by reference.

32.     On or about June 24, 2013 Defendant sent Plaintiff a Modification Letter for the Home Affordable Modification Program even though the Plaintiff had already surrendered the property in his Chapter 7 Bankruptcy.  A copy of this June 24, 2013 letter is attached hereto as Exhibit "L."

33.     On or about July 11, 2013, PennyMac sent Plaintiff a letter on the Account requesting a deed-in-lieu of foreclosure and requesting Plaintiff call or email PennyMac at the phone number or email address provided, complete and return the Deed-in-Lieu package provided and to finalize the Deed-in-Lieu by 11/23/2013 to receive $1,500.00.  A copy of this letter is attached hereto as Exhibit "M" and is incorporated herein by reference.

34.      On or about July 16, 2013, PennyMac sent Plaintiff a letter on the Account offering options available to avoid foreclosure and requesting Plaintiff call PennyMac at the phone number provided.  A copy of this letter is attached hereto as Exhibit "N" and is incorporated herein by reference.

35.     On or about July 17, 2013, Defendant PennyMac sent Plaintiff a Monthly Mortgage Statement for the Account, complete with payment coupon and return envelope, even after it had been notified that Plaintiff surrendered the Property and it knew the debt had been discharged.

The statement represented that $13,316.40 was due, owing and collectable.   A copy of this statement has been attached hereto as Exhibit "O" and is incorporated herein by reference.

36.     On or about August 2, 2013, PennyMac sent Plaintiff a letter regarding the Account and informing him that it had attempted to contact him by mail and on at least three (3) occasions by phone to discuss and assess his financial situation.   The letter requested Plaintiff call PennyMac regarding the Account and informed him that "this is an attempt to collect a debt" and asking Plaintiff to call PennyMac at (866) 545-9070 to discuss avoiding foreclosure, even after PennyMac knew the Property had been surrendered nine (9) months earlier and that the Account and its underlying debt had been discharged.   A copy of this August 2, 2013 letter has been attached hereto as Exhibit "P" and is incorporated herein by reference.

37.     On or about August 19, 2013, PennyMac sent Plaintiff a Monthly Mortgage Statement for the Account, complete with payment coupon and return envelope, even after it had been notified that Plaintiff surrendered the Property and it knew the debt had been discharged.   The statement represented that $14,197.98 was due, owing and collectable.   A true and correct copy of this statement has been attached hereto as Exhibit "Q" and is incorporated herein by reference.

38.     On or about August 23, 2013, PennyMac caused its partner GR Financial, LLC to send Plaintiff a letter asking him for a Deed in Lieu of Foreclosure, even though the Property had been surrendered, the Debt discharged, and PennyMac and GR Financial, LLC, were prohibited from contacting Plaintiff by the Bankruptcy Court's Discharge Order.   A true and correct copy of this letter has been attached hereto as Exhibit "R" and is incorporated herein by reference.

39.     Sometime in October 2013, PennyMac hired Remax, a real estate firm, to knock on Plaintiff's door in Texas and attempt to negotiate a short sale of the Property.

40.      On or about October 23, 2013, PennyMac sent Plaintiff a notice stating that it was "an attempt to collect a debt" and stating that the Property was in foreclosure, and again, offering options to foreclosure and requesting Plaintiff call PennyMac at the phone number provided, even though the Property had been surrendered and the debt discharged.  A true and correct copy of this letter has been attached hereto as Exhibit "S" and is incorporated herein by reference.

41.      On or about October 31, 2013, PennyMac caused Trustee Corps to send Plaintiff a packet of notices on its behalf, including a notice that the information was sent in an "effort to collect a debt" and advising Plaintiff that the Property was in foreclosure and such foreclosure would take place within ninety (90) days and requesting Plaintiff contact TrusteeCorps and to provide information requested.  A true and correct copy of these notices are attached hereto as Exhibit "T" and incorporated herein by reference.

42.      On or about November 18, 2013, PennyMac sent Plaintiff a Monthly Mortgage Statement for the Account, complete with payment coupon and return envelope, even after it had been notified that Plaintiff surrendered the Property and it knew the debt had been discharged.  The statement represented that $15,951.16 was due, owing and collectable.  A true and correct copy of this statement has been attached hereto as Exhibit "U" and is incorporated herein by reference.

43.      On or about November 26, 2013, PennyMac sent Plaintiff a letter asking him for a Deed in Lieu of Foreclosure, even though the Property had been surrendered, the Debt discharged, and PennyMac was prohibited from contacting Plaintiff by the Bankruptcy Court's Discharge Order. A true and correct copy of this letter has been attached hereto as Exhibit "V" and is incorporated herein by reference.

44.     Further, despite the change in the legal status of the Account, after Plaintiff filed his Bankruptcy Case and included the Account at issue in the bankruptcy, Defendants illegally accessed Plaintiff's credit report with Experian while he was in bankruptcy, even though it had no permissible basis to take such action and Plaintiff had put Defendants on notice that he was surrendering the Property and SunTrust lifted the stay on the Property in the Bankruptcy Case to proceed with foreclosure.

45.     Defendants knew and continue to know that a discharge order means the discharged debt is no longer collectible, but Defendants have made a corporate decision to willfully and maliciously act contrary to this knowledge in their calculated decision to violate Plaintiff's right to privacy by impermissibly accessing Plaintiff's credit report during his Bankruptcy Case.

46.     After a reasonable time for discovery, Plaintiff believes he will be able to show that despite receiving dozens, if not hundreds, of disputes complaining that PennyMac, as agent for SunTrust, was illegally accessing credit reports for account holders whose debts with Defendants were in bankruptcy, Defendants intentionally and knowingly have not corrected their policy of doing engaging in this action.

47.     After a reasonable time for discovery, Plaintiff believes he will be able to show that all actions taken by employees, agents, servants, or representatives of any type for SunTrust were taken in the line and scope of such individuals' (or entities') employment, agency, or representation.

48.     After a reasonable time for discovery, Plaintiff believes he will be able to show that all actions taken by Defendants at issue were performed maliciously, wantonly, recklessly, intentionally or willfully, and were taken with either the desire to harm Plaintiff and/or with the

knowledge that their actions would very likely harm Plaintiff and/or that their actions were taken in violation of the law.

49.     After a reasonable time for discovery, Plaintiff believes he will be able to show that Defendants have engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts and consumer reports, and Defendants are subject to punitive damages, statutory damages, and all other appropriate measures to punish and deter similar future conduct by Defendants and similar companies.

## V.  GROUNDS FOR RELIEF - COUNT I

### FAIR CREDIT REPORTING ACT (FCRA 15 U.S.C. §1681 *et. seq*)

50.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

51.     The FCRA establishes very specific rules limiting when and why an entity can obtain a consumer report:

> (f)  Certain use or obtaining of information prohibited. – A person shall not use or obtain a consumer report for any purpose unless –
>
> (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
>
> (2)  the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

*See* 15 U.S.C. § 1681b (f).

52.     Section 1681b(a)(3) lists the all-inclusive purposes for which a consumer report can be obtained:

(a) In General. – * * * [A] consumer reporting agency may furnish a consumer report under the following circumstances and no other:

***

(3)  To a person which it has reason to believe –

(A)  intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;

***

(F)  otherwise has a legitimate business need for the information * * *

(ii)  to review an account to determine whether the consumer continues to meet the terms of the account.

See 15 U.S.C. § 1681b (a)(3).

53.    After the Bankruptcy Case was filed and Plaintiff filed his Individual Chapter 7 Debtor's Statement of Intentions noting that he was surrendering the Property, PennyMac requested and obtained Plaintiff's consumer report from Experian credit bureau when it had no legal purpose to access such report, since Plaintiff surrendered the Property.

54.    On such occasion, PennyMac represented to Experian that such request was made for "account review" or "collection" purposes.

55.    When requesting and obtaining Plaintiff's credit information from Experian, as described herein, PennyMac had actual knowledge that it did not have a permissible purpose to obtain such information since it could not attempt to collect the debt during the Bankruptcy Case and after a discharge was granted..

56.     Defendants had actual knowledge that as of the filing of Plaintiff's Bankruptcy Case and the granting of the Discharge Order, the automatic stay was in effect and Defendants were legally prohibited from pursuing any collection against Plaintiff or communicating with him about the Account and the underlying debt to justify an account review of his credit information. As such, Defendants had actual knowledge that it did not have a permissible purpose to access Plaintiff's credit report with the credit bureau.

57.     At the time PennyMac impermissibly accessed Plaintiff's credit report, Defendants had actual knowledge that Plaintiff had not requested new credit from it nor had initiated any credit transaction with Defendants at any time since his bankruptcy filing or discharge.  As such, Defendants had actual knowledge that they did not have a permissible purpose to access Plaintiff's credit information as PennyMac did.

58.     For PannyMac to request and obtain Plaintiff's private personal and financial information, in the face of actual knowledge that it had no permissible purpose to do so, constitute its knowing and willful violations of the FCRA.

59.     After a reasonable time to conduct discovery, Plaintiff believes he can prove that PennyMac requested and obtained Plaintiff's private personal and financial information from Experian for the illegal purpose of attempting to collect on the underlying discharged debt.

60.     After a reasonable time to conduct discovery, Plaintiff believes he can prove that PennyMac as agent for Suntrust used false pretenses, namely the representation that it intended to use Plaintiff's consumer report for account review or collection purposes, to obtain Plaintiff's private personal and financial information for the illegal purpose of attempting to collect on the underlying discharged debt.

61.     After a reasonable time to conduct discovery, Plaintiff believes he can prove, additionally and/or in the alternative, that Defendants are unwilling or unable to prevent their systems from requesting and obtaining Plaintiff's consumer report without a permissible purpose, thereby subjecting Plaintiff to having his private, personal and financial information disclosed without his consent, authorization or other legal justification.

62.     As a direct and proximate result of Defendants' conduct as outlined above, Plaintiff has suffered, and will continue to suffer, substantial injury, including, but not limited to, mental anguish and emotional distress from the ongoing invasion of his privacy, entitling Plaintiff to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

63.     Defendants' conduct reveals a conscious and reckless disregard of Plaintiff's rights.  The injuries suffered by Plaintiff were attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiff to punitive damages pursuant 15 U.S.C. § 1681n(a)(2).

## VI.  GROUNDS FOR RELIEF - COUNT II

## TEXAS FINANCE CODE - UNFAIR DEBT COLLECTION

64.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraph as above as if fully rewritten here.

65.     Defendants have violated the Texas Finance Code in numerous ways including, but not limited to, the following:

a)   Tex. Fin. Code § 392.301(a)(8), which prohibits Defendants from taking an action prohibited by law, since the FCRA prohibits accessing a credit report without a valid purpose and Defendants' contacting Plaintiff in its attempts to collect on the subject debt violated the automatic stay and/or the discharge injunction of the Bankruptcy Court;

b) Tex. Fin. Code § 392.304(a)(8), which prohibits Defendants from misrepresenting the character, extent, or amount of Plaintiff's debt, or misrepresenting the status of Plaintiff's debt in a judicial or governmental proceeding, since PennyMac alleged the justification for accessing Plaintiffs' credit report and credit information was an "account review" or "collection," that was a misrepresentation of the status of debt at issue; and, by sending letters and statements to Plaintiff regarding the Account and showing a balance due on the account at issue, threatening Plaintiff with doing damage to his credit by reporting his delinquency to the credit bureaus, and by calling Plaintiff regarding the Account, Defendants misrepresented that the debt was collectable when it was not by virtue of the automatic stay or the discharge injunction; and

c) Tex. Fin. Code § 392.304(a)(19), which prohibits Defendants' use of false representations or deceptive means to collect a debt, since the debt at issue was discharged in Plaintiff's Bankruptcy Case and there were no other transactions between the parties post-discharge, the only conclusion that can be drawn is Defendants were trying to gather information for an attempt to collect the debt at issue in violation of the discharge injunction.  Also, the continued sending of statements and notices, calling Plaintiff, accessing Plaintiff's credit report and sending agents to the Property to discuss a short sale regarding the Account, these were deceptive means to collect a debt because the automatic stay was in effect or the debt had already been discharged and was uncollectible.

66. Under Tex. Fin. Code Ann. § 392.403, the said violations render Defendants liable to Plaintiff for actual damages, statutory damages, for injunctive relief, costs, and reasonable attorney's fees.  Plaintiff's injuries resulted from Defendants' gross negligence, malice, and/or actual fraud, which entitle Plaintiff to punitive damages.

67.     Due to Defendants' conduct, Plaintiff was forced to hire counsel and his damages include reasonable attorney's fees incurred in prosecuting this claim.

## VII. GROUNDS FOR RELIEF - COUNT III.

## COMMON LAW TORT OF UNREASONABLE COLLECTION

68.     Plaintiff repeats, re-alleges, and incorporates herein by reference the above paragraphs. The above described debt collection efforts of Defendants constitute a pattern of harassment that is willful, wanton, malicious, and intended to inflict mental anguish and bodily harm.

69.     Specifically, the continued sending of statements and notices, demands for payment on the Account, telephone calls, assignment of the discharged account to a law firm to arrange a short sale by going to the Property to discuss this with Plaintiff, and illegal credit pull, singularly and collectively, constitute an unreasonable collection.

70.     The acts by Defendants were performed maliciously, wantonly, recklessly, intentionally, knowingly or willfully, and were done with either the desire to harm Plaintiff and/or with the knowledge that its actions would very likely harm Plaintiff and/or that its actions were taken in violation of the law.  Accordingly, Plaintiff is entitled to punitive damages.

71.     The conduct of Defendants at issue was the proximate and/or producing cause of Plaintiff's actual damages including past and future economic loss, past and future extreme mental anguish, loss of time, damage to his credit, attorney's fees and costs of court.

## VIII. GROUNDS FOR RELIEF - COUNT IV

## INVASION OF PRIVACY

72.     Plaintiff restates and reiterates herein all previous paragraphs.

73.     Defendant Pennymac's conduct as agent for Suntrust, as described herein, when it acquired a copy of Plaintiff's consumer report constituted an invasion of Plaintiff's private

affairs.  The invasion was one that would be highly offensive to a reasonable person because confidential and sensitive personal and financial information is included a consumer report. Such wrongful acts caused injury to Plaintiff which resulted in extreme emotional anguish, loss of time, and damage to his credit.  Plaintiff's injuries resulted from Defendants' malice which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

## V. GROUNDS FOR RELIEF - COUNT V

## VIOLATION OF THE BANKRUPTCY DISCHARGE INJUNCTION

74.     Plaintiff repeats, re-alleges, and incorporates herein all previous paragraphs above as if set forth herein in their entirety.

75.     At all times material to this proceeding, Defendants had actual knowledge of Plaintiff's' Bankruptcy Case and the discharge of the debt at issue in said case.

76.     Defendants failed to cease their debt collection activity on the Account and debt at issue when they became aware that Plaintiff filed for bankruptcy protection and the debt had been discharged in his Bankruptcy Case, as evidenced by PennyMac, as agent for SunTrust, calling Plaintiff, sending him notices, statements and collection letters, sending someone out to his house to attempt to negotiate a short sale of the Property, and accessing his Experian credit report without a lawful purpose.

77.     Defendants' aforesaid actions were willful acts and constitute efforts to collect discharged debt from Plaintiff in violation the discharge injunction of 11 U.S.C. §524(a). Defendants' failure to comply with the aforesaid laws, in light of repeated notices from the Bankruptcy Court about Plaintiff's Bankruptcy Case, the discharge of Plaintiff's debt at issue and the legal effect of the discharge, illustrates its contempt for Federal law and the discharge

injunction.  These actions of Defendants constitute a gross violation of the discharge injunction as set forth in 11 U.S.C. §524(a)(1)-(3).

78.    The facts and background stated above demonstrate that Defendants willfully violated the orders and injunctions of the Bankruptcy Court as they concern the chapter 7 bankruptcy filed by Plaintiff.  With this prima facie showing, the duty is on Defendants to show, as the only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court that goes beyond a mere assertion of inability.  Failing a showing of a present inability to comply with the orders and injunctions of the Bankruptcy Court by Defendant, Plaintiff must prevail on his claims, and Defendants must be held liable for willfully violating the orders and injunctions of the Bankruptcy Court with regard to the bankruptcy filed by Plaintiff.  Any defense put forth by Defendants in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made to explain the conduct and actions of Defendant.   However, any allegation of a good faith exception should not be allowed.

79.    Specifically, Defendants violated the part of the Bankruptcy Court's Discharge Order pertaining to 11 U.S.C. §524(a)(2) which "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived;…'"

80.    No exceptions exist under 11 U.S.C. §524 or the other provisions of the United States Bankruptcy Code or other applicable law that permit the conduct of Defendants at issue with regard to the discharge injunction, as stated above.

81.    The orders and injunctions of the Bankruptcy Court cannot be waived, except by the virtue of a properly filed and approved reaffirmation agreement, motion, stipulation or

complaint. None of the aforementioned has been approved by the Court here, and no waiver of the orders or injunctions of the Court has occurred in Plaintiff's Bankruptcy Case as pertaining to the rights and remedies of Defendant.

82.     Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to violations of the orders and injunctions of the Bankruptcy Court. Any attempt to burden Plaintiff with policing the misconduct of Defendants would be a complete derogation of the law. It is well settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for shouldering the cost of compliance. Any such defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited. Any defense put forth by Defendants in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and action of Defendant. However, no allegation of a mitigation as a defense should be allowed.

83.     Plaintiff has been injured and damaged by Defendants' actions and is entitled to recover judgment against Defendants for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for violations of 11 U.S.C. §524, and pursuant to the Court's powers under 11 U.S.C. § 105.

        WHEREFORE, PREMISES CONSIDERED, Plaintiff, Joshua Arthur Morones, prays that the Court will:

        A.      Enter judgment in favor of Plaintiff and against Defendants for statutory damages, actual damages, costs, pre and post judgment interest, and reasonable and necessary attorney fees as provided by Tex. Fin. Code Ann. § 392.403, under the FCRA, for invasion of privacy, for unreasonable collection and for violation of the discharge injunction.

B.      Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.      Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

D.      Grant such other and further relief, in law or equity, to which Plaintiff might show himself justly entitled.


Respectfully submitted,


_____/s/ James J. Manchee____
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
Marilyn S. Altamira
State Bar Number 00796119
maltamira@mancheelawfirm.com
Manchee & Manchee, PC
12221 Merit Drive, Suite 950
Dallas, Texas 75251
(972) 960-2240 (telephone)
(972) 233-0713 (fax)


JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.


1-07-14_____                    _/s/ *James J. Manchee*_____
Date                             James J. Manchee